Amaris M. BRAVO SANTIAGO,
et al., Plaintiffs,

v.

FORD MOTOR COMPANY,
et al., Defendants.

No. Civ. 99–1823 SEC.

United States District Court,
D. Puerto Rico.

June 18, 2002.

William A. Graffam, Jimenez, Graffam & Lausell, San Juan, PR, Ruy V. Diaz–Diaz, San Juan, PR, for plaintiffs.

Ronald E. Cabanis, E. Scott Pacula, Jeffrey G. Regenstreif, Larry D. Smith, Cabaniss, Smith, Toole & Wiggins, PL, Maitland, FL, Francis M. McDonald, Cabaniss, Conroy & McDonald, L.L.P., Orlando, FL, Manuel A. Guzman–Rodriguez, Manuel A. Guzman Law Office, San Juan, PR, for defendants.

## OPINION AND ORDER

CASELLAS, District Judge.

Pending before the Court is Defendant Ford Motor Company's motion to disqualify the undersigned from presiding over the above-captioned case (**Docket # 111**). Having considered Defendant's motion, as well as Plaintiffs' response (**Docket # 112**), the Court is convinced that there is no reasonable basis to request this disqualifi-

cation, particularly at this late stage of the proceedings. Consequently, Defendant's motion will be **DENIED.**

**Factual Background**

The above-captioned action arises from a car accident in which Plaintiff Amaris M. Bravo Santiago suffered physical damages, allegedly as a result of the defective functioning of her car's seatbelt and airbag systems. Plaintiffs filed their complaint on July 29, 1999. Almost one year passed between this date and the issuance of a Case Management Order, because the parties requested that proceedings be stayed pending settlement negotiations. Said settlement never materialized, and discovery proceeded. On December 20, 2000, this Court granted the parties an extension of time to conclude discovery and submit their Joint Pretrial Report. The parties then requested several other extensions, and after working through numerous discovery disputes, the parties finally submitted a final version of said report on December 14, 2001.

The Court then referred the case to Visiting Judge Ward for the holding of a Settlement Conference. Judge Ward met with the parties on several occasions and attempted to convince the parties to settle the case. However, the parties have been unable to come to an agreement. As such, on April 18, 2002, the Court set the case for Jury Trial to start on June 17, 2002. Defendants then filed a motion seeking a continuance of the trial. The Court held a Status Conference on May 15, 2002, at which counsel for all parties were present. At that meeting, the Jury Trial was re-set for August 5, 2002.

Defendant now moves to disqualify the undersigned from presiding over this case. Defendant explains that the undersigned filed, around ten years ago, a lawsuit claiming damages for physical injuries sustained during an automobile accident. In said suit, the undersigned alleged that the injuries had been caused by a defective seatbelt and airbag system, and requested damages under products liability law. Based on this, Defendant concludes that the undersigned's past experience is enough to reasonably question his impartiality when presiding over this action.

**Applicable Law and Analysis**

Defendant moves for disqualification under 28 U.S.C. § 455(a), which states that "[a]ny justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." The case law that has interpreted this Section has held that a motion to disqualify "must be evaluated on an objective basis, so that what matters is not the reality of bias or prejudice but its appearance." *Liteky v. United States,* 510 U.S. 540, 549, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994). Under Section 455(a) it is the judge who must assess his own disqualification whenever his impartiality might be reasonably questioned. Disqualification under Section 455(a) is required only if the court finds that a reasonable person, knowing all the circumstances, would harbor doubts about the judge's impartiality.

However, "[n]o permissible reading of subsection 455(a) would suggest that Congress intended to allow a litigant to compel disqualification simply on innuendo concerning the possible partiality of the presiding judge." *El Fénix de Puerto Rico v. M/Y JOHANNY,* 36 F.3d 136, 140 (1st Cir.1994). The First Circuit has further explained that "disqualification is appropriate only if the facts provide what an objective knowledgeable member of the public would find to be a reasonable basis for doubting the judge's impartiality. **Were less required, a judge could abdicate in difficult cases at the mere sound of controversy, or a litigant could avoid ad-**

verse decisions by alleging the slightest of factual bases for bias." *Id.* at 141 (citations omitted) (emphasis added). Although the avoidance of any appearance of partiality is of great importance for the courts, it is equally important to ascertain and be aware "of the potential injustices that may arise out of unwarranted disqualification." *In re Allied–Signal,* 891 F.2d 967, 970 (1st Cir.1989).

Judges inevitably bring their personal experiences to the bench. "Judges are human: like all humans, their outlooks are shaped by their lives' experiences. It would be unrealistic to suppose that judges do not bring to the bench those experiences and the attendant biases they may create. A person could find something in the background of most judges which in many cases would lead that person to conclude that the judge has a 'possible temptation' to be biased. **But not all temptations are created equal. We expect— even demand—that judges rise above these potential biasing influences, and in most cases we presume judges do.**" *Del Vecchio v. Illinois Department of Corrections,* 31 F.3d 1363 (7th Cir.1994) (en banc) (emphasis added). Impartiality does not require gullibility or child-like innocence. *Liteky,* 510 U.S. at 552, 114 S.Ct. 1147 "[T]he disqualification decision must reflect *not only* the need to secure public confidence through proceedings that appear impartial, *but also* the need to prevent the parties from too easily obtaining disqualification of a judge, thereby potentially manipulating the system for strategic reasons, perhaps to obtain a judge more to their liking." *In re Allied–Signal* 891 F.2d at 970 (emphasis in original).

The inquiry regarding the recusal of a judge must be made on a case-by-case basis. Recusal under Section 455(a) "is triggered by an attitude or state of mind so **resistant to fair and dispassionate** inquiry as to cause a party, the public or the reviewing court to have reasonable grounds to question the neutral and objective character of the judge's rulings or findings. **I think all would agree that a high threshold is required to satisfy this standard.**" *Liteky,* 510 U.S. at 557–558, 114 S.Ct. 1147, (J. Kennedy concurring) (emphasis added). Disqualification of a judge is proper, then, only "if it appears that he or she harbors an aversion, hostility or disposition of a kind that a fair minded person could not set aside when judging the dispute." *Id.* The trial judge is accorded a broad range of discretion in deciding when it is proper to disqualify himself. *In re Allied–Signal,* 891 F.2d 967.

As we mentioned above, lifetime experiences, good or bad, are something all judges bring with them to the bench, and only in unusual circumstances would a judge be required to recuse himself because of such an experience. Plaintiffs, in their response, offer a concise summary of several cases that show when it is not necessary for a judge to disqualify himself in a case where a particular past personal experience of the judge might be related to the litigation. Let us take a look at some of these cases.

In *U.S. v. Watson,* 1 F.3d 733 (8th Cir. 1993), the court held that a judge could preside a case against a defendant even after the defendant had sued the judge. In *US. v. Payne,* 944 F.2d 1458 (9th Cir. 1991) the judge's prior participation on the Attorney General's Commission on Pornography did not create an appearance of bias when presiding over a criminal case dealing with carnal knowledge of a female under age sixteen. Perhaps most poignantly, in *Tafero v. Wainwright,* 796 F.2d 1314 (11th Cir.1986), *rehearing denied,* 807 F.2d 999 (11th Cir.1986), *cert. denied* 483 U.S. 1033, 107 S.Ct. 3277, 97

L.Ed.2d 782 (1987), it was held that the fact that the trial judge had been a police officer in the past **and had attended the victim's funeral** did not establish bias that would prevent him from presiding the criminal case **against the defendant charged with the murder.** In *Parrish v. Board of Commissioners,* 524 F.2d 98 (5th Cir.1975), *cert. denied* 425 U.S. 944, 96 S.Ct. 1685, 48 L.Ed.2d 188 (1976) the Circuit Court upheld the denial of a recusal motion in a case where plaintiffs claimed discrimination by the Bar Association against black people. The plaintiffs moved to disqualify the trial judge because he had been an officer of the Bar Association in the past, and at the time of the filing of the motion was still a member of said association. In *Paschall v. Mayone,* 454 F.Supp. 1289 (S.D.N.Y.1978), the defendants, in a case about alleged prison beatings, moved for disqualification because the judge had represented prisoners in civil rights cases. The trial judge denied the motion for disqualification. In *David v. City and County of Denver,* 837 F.Supp. 1094 (D.Colo.1993) the plaintiff in a civil rights case moved to disqualify the trial judge on grounds of an appearance of bias. The trial judge after careful consideration denied the request holding that his acquaintance with the Chief of the Police Department and one Sergeant during the investigation of his son's killing did not mandate disqualification. *See also In re United States* 158 F.3d 26 (1st Cir.1998) (holding that a trial judge's previous financial transaction with the banking institution where the defendant used to work as a high ranking officer did not amount to partiality).

Courts have also been unwilling to require recusal in cases where the judge might have some relation to the parties or the issues before him, because of previous litigation, when that previous litigation was far enough removed in time or subject matter from the present one. *See, e.g., Chitimacha Tribe of Louisiana v. Harry L. Laws Company, Inc.,* 690 F.2d 1157, 1166 (5th Cir.1982), *cert. denied* 464 U.S. 814, 104 S.Ct. 69, 78 L.Ed.2d 83 (1983) (recusal not warranted where judge had represented the defendant in unrelated matters at least six years earlier); *Jenkins v. Bordenkircher,* 611 F.2d 162, 165–67 (6th Cir.1979), *cert. denied* 446 U.S. 943, 100 S.Ct. 2169, 64 L.Ed.2d 798, (1980) (recusal not required where trial judge had prosecuted defendant for several unrelated crimes during the period four to thirteen years prior to the time of trial); *Gravenmier v. United States,* 469 F.2d 66, 67 (9th Cir.1972) (where trial judge was of counsel in prior prosecution six years before present unrelated prosecution, recusal not required); *Darlington v. Studebaker–Packard Corp.,* 261 F.2d 903, 906 (7th Cir.), *cert. denied* 359 U.S. 992, 79 S.Ct. 1121, 3 L.Ed.2d 980 (1959) (recusal not warranted where trial judge had represented defendant in unrelated matters for a period of four to five years which ended three to four years before judge's decision); *Royal Air Maroc v. Servair, Inc.,* 603 F.Supp. 836 (S.D.N.Y.1985) (prior representation by trial judge of defendant's parent corporation in unrelated matter twelve years earlier no basis for recusal).

■ In any event, prior knowledge about legal issues is not a ground for recusal of a judge. *Cipollone v. Liggett Group, Inc.,* 802 F.2d 658, 659 (3rd Cir. 1986). Familiarity with the type of case or with the defenses presented is insufficient to justify a recusal. *See Mitchael v. Intracorp., Inc.,* 179 F.3d 847 (10th Cir.1999). "If Judges could be disqualified because their background in the practice of law gave them knowledge of the legal issues which might be presented in cases coming before them, then only the least-informed and worst-prepared lawyers could be ap-

pointed to the bench." *Cipollone*, 802 F.2d at 659–660.

■ Lastly, we must point out that one very important factor that a judge must consider under Section 455(a) is the timeliness of the party's motion. *In re United States*, 158 F.3d 26. Section 455(a) requires that a party raise the issue of disqualification of the judge at the earliest moment after acquiring knowledge of the facts providing a basis for disqualification. *United States v. Hurd*, 549 F.2d 118, 119 (9th Cir.1977); *United States v. Patrick*, 542 F.2d 381 (7th Cir.1976), *cert. denied* 430 U.S. 931, 97 S.Ct. 1551, 51 L.Ed.2d 775 (1977). *See also El Fénix de Puerto Rico*, 36 F.3d at 141 n. 6 *citing* 7 James W. Moore & Jo D. Lucas, Moore's Federal Practice ¶ 63.07 [2.–2] (2d ed. 1993) ("[A] litigant who is aware of a potential ground of recusal should not be permitted to 'sandbag' that ground, hoping for a satisfactory resolution, but retaining a ground of attack on the judge's ruling."); *United States v. Studley*, 783 F.2d 934, 939 (9th Cir.1986) (a motion for recusal filed weeks after the conclusion of trial was presumptively untimely, absent a showing of good cause for the tardiness). Therefore, a judge should be less inclined to grant a recusal when the movant has waited until the last possible moment to bring up the recusal. Such a tactic must necessarily be looked at through the glass of cynical suspicion, as it may constitute nothing more than an attempt to delay the case and engage in economic intimidation of the opposing party.

■ In the case at bar, Defendant has completely failed to satisfy the standards we have just described. Defendant bases its request on the fact that the undersigned suffered some injuries in an automobile accident, and sued for damages under a products liability theory. However, the Court understands that the relationship between said suit and the one at bar is so tenuous, that recusal in this case would constitute an irresponsible renunciation of the undersigned's duties as a judge.

First, we must point out that the manufacturer of the undersigned's car was BMW, not Ford. Defendant was not a party in the previous suit and was in no way related to said litigation. Furthermore, the undersigned sued because the airbag in his car **failed** to deploy, whereas Plaintiffs in the case at bar are suing because the airbag allegedly deployed **when it was not supposed to do so.** Defendant contends that the cases are similar because they both involve interpretation of the renowned "consumer expectations test." However, nearly all products liability cases involve said test. If recusal were to be required because of this, one would also have to require that a judge who has been divorced recuse himself from all divorce cases. Such a result would be highly impractical and unnecessary. Apart from this general similarity in subject matter, Defendant must concede, the case at bar and the undersigned's previous life experience have nothing to do with each other. This hardly compares to some of the situations present in the cases previously summarized, and in which recusal was nonetheless denied.

Perhaps more importantly, the undersigned's lawsuit was filed about ten years ago. The Court believes it is unreasonable to think that any animus that a judge may have had towards BMW **ten years ago** would translate into an "attitude or state of mind so **resistant to fair and dispassionate inquiry**" towards all automakers, and Ford in particular, which would require recusal. *Liteky*, 510 U.S. at 557–558, 114 S.Ct. 1147, (J. Kennedy concurring) (emphasis added). Furthermore, Defendant fails to mention that the undersigned in fact settled that previous

litigation for a nominal amount. Such an expedited settlement was done precisely because the undersigned was nominated to his current position as U.S. District Judge, and did not want to have a case pending before the Court while he was a Judge therein. It was, in fact, those prudential considerations, and a desire to eliminate even the smallest possible inkling of an appearance of impropriety, that worked towards a swift resolution of the previous litigation.

Finally, the Court must note that this case has been pending for almost three years now. Several extensions have been granted to both parties so that discovery could be completed in a fair and adequate fashion. Defendant, nonetheless, has repeatedly filed motions for sanctions which come vertiginously close to the frivolous, and has engaged in a pattern of conduct which appears to have no intention other than to delay the trial of this case. Whether some of the discovery disputes have also been caused by Plaintiffs or not is beside the point. The Court has repeatedly explained to the parties that it is intent, in this as well as in every other case, on resolving disputes on the merits, and not based on the creative yet empty stratagems of the litigants. And now, Defendant has filed this motion requesting recusal at a very advanced stage of these proceedings, when trial is imminent. The Court cannot help but look at this latest tactical move as an attempt to delay the trial which is set for August 5, 2002, after their attempt to have this Court set trial as late as November of this year failed. This case has been ready for trial for several months now, and it should have been ready months before that. The Court has been patient with the parties up until now. However, we will not permit any further unnecessary delays. Defendant should have moved for recusal in a more timely fashion. At the very least,

Defendant was required to explain why it failed to move for recusal at an earlier time. It has failed to even aver that it was unaware of the alleged grounds for disqualification. As such, the untimeliness of this motion also weighs heavily against it.

## Conclusion

For the reasons discussed above. Defendant's motion requesting disqualification is **DENIED. Jury Trial remains set for August 5, 2002 at 9:00 a.m., and a final Pretrial and Settlement Conference is re-set for July 23, 2002 at 4:00 p.m.**

**SO ORDERED.**