**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 10-4562

_____

WILLIAM M. DANIELS, JR.,

Appellant

v.

HARRY E. WILSON, Superintendent; DISTRICT ATTORNEY OF THE COUNTY OF
ALLEGHENY; ATTORNEY GENERAL OF THE STATE OF PENNSYLVANIA

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 2:06-cv-00741-DSC-LPL)
District Judge: Honorable David S. Cercone

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
December 11, 2012

Before: GREENAWAY, JR., NYGAARD, and VAN ANTWERPEN, *Circuit Judges*

(Opinion Filed: December 12, 2012)

_____

OPINION OF THE COURT

_____

VAN ANTWERPEN, *Circuit Judge*.

**I.**

Appellant William Daniels, Jr. ("Daniels") seeks review of the District Court

Judge's failure to recuse himself from consideration of Daniels' petition for writ of

habeas corpus, brought under 28 U.S.C. § 2254. A prior panel of this Court granted a Certificate of Appealability solely with regard to the issue of recusal, and denied a Certificate as to all remaining issues. Daniels argues District Judge Cercone was required to recuse himself under 28 U.S.C. § 455(a) and that the only appropriate remedy for his failure to do so is to vacate the District Court's Order denying Daniels' habeas petition and to remand the matter to a different district judge. After careful consideration of the parties' arguments, we find that Judge Cercone did not err in failing to recuse himself, and we will affirm the District Court's denial of the habeas petition in all respects.[1]

## II.[2]

The facts are amply set forth in the Magistrate Judge's Report and Recommendation, which was adopted by Judge Cercone as the District Court's opinion. The current appeal arises from Judge Cercone's denial of Daniels' petition for writ of habeas corpus.

From August 1995 until September 1996, Daniels was charged with several offenses in three separate criminal complaints, all based on a shooting which occurred on September 20, 1994. Daniels failed to appear for a January 14, 1997 preliminary hearing for one of the three complaints. As a result, on March 26, 1997, Judge David S. Cercone, then Administrative Judge for the Allegheny County Court of Common Pleas, issued a

---

[1] Because Judge Cercone did not err, we need not address Daniels' argument regarding remedy.

[2] The District Court had jurisdiction under 28 U.S.C. §§ 1331, 2241, and 2254. We have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253. When a habeas petitioner seeks, for the first time on appeal, the recusal of the district judge presiding over his habeas proceeding, we review for plain error. *Clemmons v. Wolfe*, 377 F.3d 322, 325 (3d Cir. 2004).

warrant for Daniels' arrest. A year later a Notification to Clear Warrant was issued under

Judge Cercone's authority because Daniels had been re-arrested and was in custody.[3]

On September 24, 1998, Daniels was convicted after a jury trial. Common Pleas

Judge Gerard M. Bigley had presided over this trial and subsequently sentenced Daniels.[4]

Daniels filed a direct appeal, several petitions for relief under Pennsylvania's Post

Conviction Relief Act ("PCRA"), and eventually a petition for writ of habeas corpus in

federal district court. Daniels had initially filed his federal habeas petition before he had

exhausted his state court remedies, and this habeas petition was stayed until his state

proceedings had concluded. In 2002 Judge Cercone was appointed a District Judge for

the Western District of Pennsylvania, and on November 6, 2009, he reopened Daniels'

habeas petition. In his habeas petition, Daniels raised nine issues, none of which

concerned the arrest warrant issued by then-state Judge Cercone, or the notification

clearing the warrant.[5] The habeas petition was reviewed by federal Magistrate Judge

---

[3] Both parties assert this was the full extent of Judge Cercone's involvement in the matter, and the record provided us does not indicate otherwise.

[4] The dockets for Daniels' three cases indicate Judge Bigley had been handling the cases since as early as December 6, 1995, when he denied a state court petition for writ of habeas corpus. From that point on, Judge Bigley ruled on various motions of Daniels and his attorneys, and continued to handle the case through the PCRA stage. It is clear he was the judge primarily, almost exclusively, responsible for the criminal proceedings against Daniels.

[5] These nine issues were: 1) A due process violation because the trial court abused its discretion in finding the verdict was not against the weight of the evidence; 2) a due process violation because he was convicted on insufficient evidence; 3) a due process violation because the trial court abused its discretion in admitting certain testimony; 4) a due process violation for holding juror misconduct was not a cognizable claim under the PCRA; 5) a due process violation from juror misconduct, police and prosecutorial misconduct, recantation evidence, and newly discovered evidence; 6) a due process violation entitling Appellant to a new trial based on after-discovered exculpatory

Lisa Pupo Lenihan. On October 5, 2010, Magistrate Judge Lenihan issued a fifty-page Report and Recommendation, advising that Daniels' habeas petition and request for a Certificate of Appealability be denied. On November 17, 2010, Judge Cercone issued an order denying the habeas petition and the request for a Certificate of Appealability, and adopting the Report of Magistrate Judge Lenihan as the opinion of the court.

**III**.

As previously noted, the sole issue on appeal is whether District Judge Cercone was required to recuse himself from presiding over Daniels' habeas petition due to his involvement in the state court proceedings against Daniels. Though this issue arises infrequently, this Court addressed a similar question in the past, and other circuits have as well. We will first discuss the matter in relation to our precedent, and then consider it in light of the decisions of other Courts of Appeals.

**A. Third Circuit precedent does not require recusal under Section 455(a)**

Under 28 U.S.C. § 455(a), "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." An objective standard is used to determine whether "impartiality might reasonably be questioned." *Liteky v. United States*, 510 U.S. 540, 548 (1994). It is irrelevant whether the judge was actually biased; the inquiry concerns whether a "reasonable person might perceive bias to exist." *In re School Asbestos Litig.*,

---

evidence; 7) a violation of Appellant's Sixth Amendment right to counsel, based on ineffective assistance of counsel; 8) a due process violation based on the trial court's granting of a Commonwealth motion to limit cross-examination of a Commonwealth witness; and 9) that claims based on "actual innocence" or "misconduct of justice" cannot be procedurally barred under the Eighth Amendment.

977 F.2d 764, 782 (3d Cir. 1992); *see also In re Kensington Int'l Ltd.*, 353 F.3d 211, 220 (3d Cir. 2003) (noting lack of actual bias is immaterial because § 455(a) "concerns the public's confidence in the judiciary, which may be irreparably harmed if a case is allowed to proceed before a judge who *appears* to be tainted."). Recusal is required if "a reasonable person knowing all the circumstances would harbor doubts concerning the judge's impartiality." *Jones v. Pittsburgh Nat'l Corp.*, 899 F.2d 1350, 1356 (3d Cir. 1990) (citing *United States v. Dalfonso*, 707 F.2d 757, 760 (3d Cir. 1983)).

### 1. The *Clemmons* Decision

In *Clemmons*, we addressed a question similar to the one now before us. In that case, the appellant had been convicted of first degree murder after a jury trial in state court. *Clemmons*, 377 F.3d at 324. Judge William Caldwell, at that point a state judge, had presided over appellant's trial and had imposed his sentence. *Id.* The appellant eventually filed a federal habeas petition, which was assigned to Judge Caldwell, at this point a federal District Judge. *Id.* After Judge Caldwell denied appellant's habeas petition, this Court addressed whether Judge Caldwell had been required to recuse himself under § 455(a) due to his involvement in the appellant's state court proceedings.

In holding recusal was required, this Court relied on 28 U.S.C. § 47, which provides that "[n]o judge shall hear or determine an appeal from the decision of a case or issue tried by him," and on two cases from other circuits.[6] Though § 47 was inapplicable because it applied only to cases on direct appeal, the Court recognized that a habeas

---

[6] *Russell v. Lane*, 890 F.2d 947 (7th Cir. 1989) and *Rice v. McKenzie*, 581 F.2d 1114 (4th Cir. 1978).

action provides the defendant with "federal court review [of] the state proceedings for constitutional infirmities." *Id.* at 325. Therefore, "there is no reason why the same rules governing independence, conflict of interest, or appearance of partiality should not apply." *Id.* at 325-36. This Court noted that a judge in Judge Caldwell's situation "'was being asked to find he had affirmed an unconstitutional conviction, and, implicitly, that by doing so he had become complicit in sending [petitioner] to prison in violation of [petitioner's] constitutional rights.'" *Id.* at 326 (alterations in original) (quoting *Russell v. Lane*, 890 F.2d 947, 948 (7th Cir. 1989)). Relying on the "bedrock principle of a hierarchal judiciary" codified in § 47, the Court determined a reasonable person might doubt the impartiality of a judge "tasked with reviewing his past state court rulings in a federal habeas case." *Id.* at 325, 328.

The Court then enunciated a rule requiring[7]

> that each federal district court judge in this circuit recuse himself or herself from participating in a 28 U.S.C. § 2254 habeas corpus petition of a defendant raising any issue concerning the trial or conviction over which that judge presided in his or her former capacity as a state court judge.

*Id.* at 329. Therefore, the District Court's order was vacated and the matter remanded to a different district judge. *Id.*

---

[7] The Court relied on its supervisory powers over federal proceedings in enacting this rule. *Clemmons*, 377 F.3d at 328-29 (citing *e.g.*, *Bartone v. United States*, 573 U.S. 52, 54 (1963)). As this Court noted in *Clemmons*, we have used this power in the past. *Id.* at 328 n.4 (citing *Forbes v. Twp. of Lower Merion*, 313 F.3d 144, 149 (3d Cir. 2002); *United States v. E. Med. Billing, Inc.*, 230 F.3d 600, 607-613 (3d Cir. 2000); *Vadino v. A. Valey Eng'rs*, 903 F.2d 253, 259 (3d Cir. 1990); *Quality Prefabrication, Inc. v. Daniel J. Keating Co.*, 675 F.2d 77, 81 (3d Cir. 1982)).

## 2. Application of *Clemmons* to the facts of this case

Though the language in the rule from *Clemmons* is broad, the Supreme Court has made clear that when a Court of Appeals is considering the necessity of a § 455(a) recusal, it cannot ignore the factual realities of the matter under review. Thus in *Sao Paulo State of the Federative Republic of Braz. v. Am. Tobacco Co.*, the Court reversed a decision by the Court of Appeals for the Fifth Circuit because the court failed to take into consideration the facts that gave rise to the alleged appearance of impropriety. 535 U.S. 229, 232-33 (2002) (per curiam). The Court reiterated that, when applying the objective standard to determine whether "impartiality might be reasonably questioned," the appellate court must consider what a reasonable person, "*knowing all the circumstances*," would believe. *Am. Tobacco Co.*, 535 U.S. at 232 (citations and internal quotation marks omitted). Therefore, we must balance the broad rule of *Clemmons* against the mandate of *Am. Tobacco Co.* that we not disregard the factual reality of the case before us. Taking these both into account, we find Judge Cercone did not run afoul of 28 U.S.C. § 455(a) or *Clemmons*.

*Clemmons* held § 455(a) recusal was required if the district judge was hearing a habeas petition "of a defendant raising any issue concerning the trial or conviction over which that judge presided in his or her former capacity as a state court judge." 377 F.3d at 329. Common Pleas Judge Cercone did not preside over any trial or conviction of Daniels, much less the one currently before us on appeal; that task was performed by Judge Gerard M. Bigley. Judge Cercone, in his role as Administrative Judge, only issued a warrant for Daniels' arrest when Daniels did not appear at a preliminary hearing. The

7

warrant did not concern the substantive charges against Daniels; it only issued as a result of his failure to appear at the hearing, and nothing concerning this warrant was raised in Daniels' habeas petition.

The Pennsylvania Rules of Criminal Procedure in effect at the time mandated issuance of the warrant. Under then-Rule 113,[8] if a defendant failed to appear at his preliminary hearing, "the issuing authority shall issue a warrant for the arrest of the defendant." PA. R. CRIM. P. 512 (2001).[9] Therefore, the issuance of the arrest warrant was not discretionary; it was automatically issued when a defendant, such as Daniels, did not appear for his hearing. Since Judge Cercone's involvement in the state proceedings against Daniels was non-discretionary and ministerial, he did not preside over Daniels' "trial or conviction."

Even if the issuance of a bench warrant is considered analogous to a "trial" or "conviction," Daniels is not "raising any issue concerning [that] trial or conviction." None of the many issues Daniels raised in his habeas petition reference any conduct by Judge Cercone. Appellant has had numerous opportunities to challenge then-state Judge Cercone's arrest warrant; he could have done so on direct appeal, in state collateral

---

[8] This Rule had originally been adopted as Rule 113 on September 18, 1973, and was last amended on August 24, 2004. PA. R. CRIM. P. 512 note. However, the effective text of the Rule was the same from January 1, 1995 until August 1, 2005. *Id.* As of April 1, 2001, the Rule was renumbered, from Rule 113 to Rule 512, but the language of the Rule remained the same. *Id.*

[9] The "issuing authority" was defined as "any public official having the authority of a magistrate, a Philadelphia bail commissioner, or a district justice." PA. R. CRIM. P. 103 (2001) This Rule has since been revised to reflect changes in terminology: a "bail commissioner" is now an "arraignment court magistrate," and a "district justice" is a "magisterial district judge." PA. R. CRIM. P. 103 cmt (2012).

proceedings, and in his federal habeas petition, but he has not. Therefore, the concern upon which the *Clemmons* decision was based does not exist because Judge Cercone was not "tasked with reviewing his past state court rulings in a federal habeas case." *Clemmons*, 377 F.3d at 328.

As the Supreme Court made clear in *Am. Tobacco Co.*, a party seeking recusal cannot make talismanic invocation of § 455(a)'s objective standard to obtain judicial disqualification. The use of unsubstantiated allegations that a judge's prior actions "cast a cloud over the process and . . . create the look of impropriety" will not overshadow the factual realities of the matter before us. (Appellant's Br. at 18). And the factual reality is that Daniels was not "raising any issue concerning the trial or conviction over which" Judge Cercone "presided in his . . . former capacity as a state court judge." *Clemmons*, 377 F.3d at 329. Therefore, Judge Cercone's review of Daniels' habeas petition did not "create[] an appearance of impropriety that runs the risk of undermining the public's confidence in the judicial process." *Id.* at 328 (citations and quotation marks omitted). A reasonable person, "*knowing all the circumstances*" would not doubt Judge Cercone's impartiality in deciding Daniels' habeas petition, and therefore recusal was not required. *Am. Tobacco Co.*, 535 U.S. at 232 (citation and quotation marks omitted).

### B. Precedent from the Court of Appeals for the Eighth Circuit

The Court of Appeals for the Eighth Circuit decided a situation analogous to the one before us. In *Tyler v. Purkett*, the appellant had filed a federal habeas petition and was granted an evidentiary hearing, over which District Judge Gaitan presided. 413 F.3d 696, 698, 704 (8th Cir. 2005). On appeal, the appellant argued Judge Gaitan was

9

required to recuse himself because he had been a member of the Missouri Court of Appeals at the time the appellant had moved for a rehearing or transfer of his state court appeal to the Supreme Court of Missouri. *Id.* at 704. Under Missouri Supreme Court Rules, a decision to transfer a case from the state court of appeals to the supreme court was based on whether the voting judges believed "the general interest or importance of a question involved in the case or for the purpose of reexamining existing law" mandated transfer, and was voted on by all members of the court. *Id.* (quoting Miss. S. Ct. R. 83.02). The federal Court of Appeals noted Judge Gaitan's vote as a state judge had nothing to do with the merits of the case, but only concerned whether he believed the appeal involved an interesting or important question of law. *Id.* at 704-05. The court determined that a judge's opinion regarding the interest or importance of an issue in a case would not cause a reasonable person "to question a jurist's impartiality as to the merits of the case." *Id.* at 705. Therefore, there was no threat to the "appearance of impartiality." *Id.*

This case is more analogous to *Tyler* than *Clemmons*. In *Clemmons*, the petitioner sought to have the District Judge find that he had imposed a conviction and sentence in violation of the petitioner's constitutional rights. As explained above, Judge Cercone was asked to do nothing of the sort when he reviewed Daniels' habeas petition. Rather, like Judge Gaitan in *Tyler*, his involvement concerned non-substantive matters that were more administrative in nature. Similarly to the petitioner in *Tyler*, Daniels does not seek habeas relief from the results of Judge Cercone's role in the state court proceedings. Like Judge Gaitan's vote on the state appellate court, the presence of Judge Cercone's

10

signature on a bond forfeiture order and his typed name on an arrest warrant would not "lead a reasonable person to harbor doubts about his impartiality" in deciding Daniels' habeas petition. *Tyler*, 413 F.3d at 704.

## IV.

On August 11, 2011, a prior panel of this Court granted a Certificate of Appealability with regard to the issue of recusal and denied a certificate as to all remaining issues. We have determined that recusal was not required and that the District Court properly adopted the Magistrate Judge's opinion which, in turn, recommended denying the habeas petition in this case. Accordingly, we will affirm the District Court's denial of the habeas petition in all respects.